## Henry Erwin, Appt., v. Hannah Hoch.

To ascertain the intention of the parties to a contract all the surrounding facts and circumstances existing at the time the contract was made may be taken into consideration.

Cited in Kaul v. Weed, 203 Pa. 586, 593, 53 Atl. 489.

NOTE.—If the lease gives the right to take only certain minerals, the lessee is limited to such. Thus if the right is to take oil alone, no right passes to gas (Kitchen v. Smith, 101 Pa. 452; Palmer v. Truby, 136 Pa. 556, 20 Atl. 516); or to take soapstone only, gives no right to take other minerals (Verdolite Co. v. Richards, 7 Northampton Co. Rep. 113). See also Kier v. Peterson, 41 Pa. 357; Watterson v. Reynolds, 95 Pa. 474, 40 Am. Rep. 672; Clement v. Youngman, 40 Pa. 341. If the right is doubtful, the question is for the jury. Ford v. Buchanan, 111 Pa. 31, 2 Atl. 339.

Where a lessor has an exclusive right to the iron ore in a tract of land with a right to wash the ore on the premises, and it was not known at the time the lease was executed that ocher existed in the land the lessor has no right to appropriate to his own use the ocher accumulated in the washings of the iron ore.

(Argued March 3, 1887. Decided October 3, 1887.)

January Term, 1887, No. 330, E. D. All the judges present. Appeal from a decree of the Common Pleas of Berks County in. favor of plaintiff in a bill in equity. Affirmed.

Bill in equity filed by Hannah Hoch against James F. Dumm,. H. J. Detwiller, Franklin Shaefer, Hiram Gamler, Jr., William Schlegel, and Henry Erwin. Heard on bill, answer, replication, and proofs taken by a master.

The court sustained exceptions to the master's report and filed' an opinion, of which the following is an abstract, in which the facts are stated:

The master finds that on September 7, 1877, Hannah Hoch, plaintiff, leased to James F. Dumm, one of the defendants, for the term of fifteen years, the exclusive right to all the iron ore in a certain tract of land with the right to search, explore, excavate, dig, and carry away, and the right to wash on said premises such ore as shall require washing.

Mr. Dumm took immediate possession, and at once commenced mining. After continuing in this manner about one year, he assigned the lease to the Topton Iron Company. This company afterwards assigned the lease to Henry Erwin, who still holds the same, who continued the mining and washing. During these several years that the ore was washed on the premises, large deposits of refuse matter accumulated in the mud dam. Erwin, the present lessee, proposed to use this refuse material in the manufacture of paint, and commenced to remove it from the dam, when Mrs. Hoch, the lessor, on November 30, 1885, filed this bill, and obtained an injunction to restrain him and his employees from so doing.

The plaintiff alleged, in her bill, that this deposit was composed of clay, ocher, and mineral substances other than iron ore,. of great commercial value, used both as paint and as material used in the manufacturing of paints and pigments, and hence not within the lessee's rights under the lease.

The defendants, in their answer, assert that the substance

which the plaintiff calls "clay, ocher, and mineral substances other than iron ore," is an iron ore in a fine state of division, and therefore, under the terms of the lease, they have the right to dig, mine, and haul it away.

Is the refuse material in the mud dam iron ore? If so, the defendants have the right to take it away; but if it is not, then then they have no such right, and the injunction must be continued.

To ascertain the real intention of the parties, all the surrounding facts and circumstances may be taken into consideration when the contract was made. (Ocher was not then known in the neighborhood.)

When they said clean, merchantable iron ore, clean and merchantable for what purpose? Manifestly, clean, merchantable iron ore for the popular and universal purpose for which iron ore, as such, at the making of the lease, was used and employed. This certainly is the popular meaning—the meaning intended by the parties. There is nothing in the lease to show that the words were used in any but their ordinary sense. On the contrary, the contents of the lease confirm this interpretation by defining and determining what the parties meant by clean, merchantable iron ore, by the provision for the separation of the iron ore by washing on the premises.

We have in their acts a determination by the holders of the lease as to what was intended by the phrase "iron ore," as iron ore, as used in the manufacture of iron. This is its sole use. When its use is to be applied to some other purpose, it passes under some other name.

We think this interpretation of the words "iron ore" is sustained by Kemble Coal & I. Co. v. Scott, 15 W. N. C. 220.

Again, when the parties were contracting for and about iron ore, they must be taken to have meant something that could be properly used in an iron furnace.

With this interpretation of "iron ore," will the refuse matter in the mud dam fall within or without this definition?

To support defendant's claim, witnesses were examined to show that scientists classified ocher as iron ore. An expert testified in regard to a sample from the slush dam: "It is, I believe, and it is known commercially as ocher." Erwin, the present lessee, said, speaking of the material from the slush

dam: "I powder and sell it as it is to paint grinders. I sell it as ocher. If I bought this sample, I would sell it as ocher."

With these views it is not necessary to discuss the right of the defendants to take away the contents of the mud dam, nor is it necessary to decide the question of an equitable estoppel contended for by the plaintiff.

The court entered a decree sustaining the exceptions filed to the master's report and granting a perpetual injunction against the defendants restraining them from mining and removing from the premises any clay, ocher, or any mineral substance other than iron ore.

The assignments of error specified the action of the court in sustaining the exceptions to the master's report, in disapproving the master's recommendations, in not dismissing the plaintiff's bill, and in entering the decree for a perpetual injunction.

*Jeff. Snyder* and *Geo. F. Baer*, for appellant.—The holder of the lease has the exclusive right for the term of the lease to take from the premises all the iron ore of whatsoever variety, wherever found, and in whatever shape or condition it may be. He may wash such ore as he chooses, on the premises or off the premises; or he may remove it and dispose of it without washing it. He may dispose of the ore as he sees proper; he may use it himself, or sell it for the manufacture of pig iron, for the manufacture of paint, or for any other purpose whatever. He may remove it and sell it in any state of impurity, but the price of the royalty per ton is determined from the value of the ore at the point of time when it passes from the hands of the miner into those of the manufacturer. He may, under the terms of the lease, remove the material deposited in the mud dam.

The material in the mud dam is within the very words of the grant. These words are the lessor's words; and when she conveyed the exclusive right to all the iron ore in her land, without reservation or qualification, she must be taken to have meant what she said. If there was a kind of ore, or a variety of ore, a lower grade of ore, ore in such a fine state of division and so low in iron that the furnace companies would not want to use it, and she intended to withhold this from use, she should have said so, in some way. If we were to take only what could be used in a furnace, she could have said that. But she says we, exclusively, may take it all.

The law presumes that every man intends the legal consequences of his words. Hale v. Fenn, 3 Watts & S. 361.

But if there is any doubt about the meaning of the words "the exclusive right to all the iron ore," how can the grantor come into a court of equity and ask the chancellor to limit the scope of her own words?

"It is a fundamental rule in the interpretation of a deed or lease that it be taken most strongly against the vendor or lessor." Trout v. McDonald, 83 Pa. 146. See also 2 Bl. Com. 380; Hartwell v. Camman, 10 N. J. Eq. 134, 64 Am. Dec. 448.

The lease grants to us the exclusive right to all the iron ore in the ten acres of land; yet the learned judge, sitting as a chancellor, places upon this grant, at the instance of the grantor, such a construction as will prevent us from taking away from these premises a thousand tons of metallic iron already mined.

There is another ground upon which the appellant's title to the mud dam deposit can be maintained.

"It is a well settled rule that when anything is granted, all the means to obtain it, and all the fruits and effects of it, are granted also, and all shall pass inclusive together with the thing by the grant of the thing itself." Griffin v. Fellows, 81* Pa. 123. See also Noy, Maxims, 198; Kier v. Peterson, 41 Pa. 357; and Kitchen v. Smith, 101 Pa. 457.

*Ermentrout & Ruhl,* for appellee.—The primary object of the chancellor is to determine the intention of the parties, when they entered into the contract. In arriving at that intention the surrounding facts and circumstances, as well as the knowledge of the parties, as to the subject-matter, must be taken into consideration.

In addition to the authorities referred to by the learned judge, we would cite: New Jersey Zinc Co. v. New Jersey Franklinite Co. 13 N. J. Eq. 342; Smart v. Morton, 5 El. & Bl. 30.

At the time of the execution of the contract, neither of the parties to the lease knew of any other use to be made of iron ore than in the manufacture of metallic iron.

In fact it is not contended by the appellant that there was anything known of the existence of ocher in that section of country, prior to 1881. The use to which iron ore was put was well known and understood by the parties to the lease. They were contracting for and about iron ore; the use to which such

iron ore was then put must have been contemplated by them. Kemble Coal & I. Co. v. Scott, 15 W. N. C. 222.

OPINION BY MR. JUSTICE STERRETT:

In construing the article of agreement under which this contention has arisen and holding that under its provisions appellant, as assignee of the contract, has no right to dispose of the refuse deposited in the mud dam, we think the learned judge of the common pleas was clearly right; and, for reasons given in his opinion, accompanying the record, the decree should be affirmed.

Decree affirmed and appeal dismissed, at the costs of appellant.